James C. **PYBURN**, et al.

v.

**BILL HEARD CHEVROLET.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 9, 2001.

Application for Permission to Appeal Denied and Publication recommended by Supreme Court Nov. 19, 2001.

James W. Cameron, III, and Alexandra Coulter Cross, Nashville, TN, for appellant Bill Heard Chevrolet.

Douglas S. Johnston, Jr., and George E. Barrett, Nashville, TN, John W. Barrett and Charles Barrett, Lexington, MS, and Tom Scott, Knoxville, TN, for appellee James C. Pyburn.

## OPINION

SWINEY, J., delivered the opinion of the court, in which CANTRELL, P.J., and ASH, Sp., J., joined.

James C. Pyburn ("Plaintiff") filed a complaint styled "Class Action Complaint" against Bill Heard Chevrolet ("Defendant") arising from Plaintiff's purchase of a 1999 Chevrolet van. Plaintiff claims he was told by Defendant that it could arrange financing through General Motors Acceptance Corporation ("GMAC") at competitive rates offered by GMAC. Plaintiff alleges that he did not obtain GMAC's real interest rate, but instead received a "secretly inflated" interest rate, and that Defendant was paid a kickback on the interest rate over and above the lender's real interest rate. Plaintiff sued pursuant to the Tennessee Consumer Protection Act ("TCPA"), T.C.A. § 47–18–101, et seq., and also asserted several common law theories of recovery. At the time of the purchase, Plaintiff and Defendant executed an Arbitration Agreement ("Agreement") covering the claims currently asserted by Plaintiff. Defendant moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. The Trial Court held that the FAA applied, that the Agreement did not need separate consideration to be enforceable, that it was not an unenforceable adhesion contract, and that TCPA claims in general were amenable to arbitration under the FAA. The Trial Court further held, however, that this particular Agreement was not enforceable because of the unavailability of class action or injunctive relief in an arbitral forum, and because the costs of arbitration were "potentially prohibitive" since Plaintiff's

claims were so small. We reverse the Trial Court's holding that the Agreement is not enforceable.

### Background

Plaintiff asserts that Defendant, acting in concert with various lenders, defrauded Plaintiff and others by inducing them to purchase automobiles at the inflated interest rate. According to Plaintiff, Defendant was paid a kickback by the various lenders on the interest rate over and above the lender's real interest rate. A portion of the inflated interest rate, known as the "dealer reserve," would be paid by the lender to Defendant up-front as a kickback, with additional sums being paid once the purchaser satisfied the terms and conditions of the finance contract. Plaintiff alleges that Defendant's actions constituted a breach of its contractual duty of good faith and fair dealing and violated the TCPA, T.C.A. § 47–18–101. Plaintiff also sued on the theories of unjust enrichment and/or disgorgement, money had and received, intentional misrepresentation, civil conspiracy, and fraudulent concealment. Plaintiff sought to have the lawsuit certified as a class action pursuant to Rule 23 of the Tenn.R.Civ.P., seeking, on behalf of himself and the proposed class, compensatory damages, treble damages, punitive damages, injunctive relief, and attorney's fees. At the time of appeal, no class had been certified by the Trial Court.

When Plaintiff purchased the van on October 2, 1999, he signed a separate, one page document titled "Arbitration Agreement" which provides as follows:

**ARBITRATION AGREEMENT**

Buyer/lessee acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce.

Buyer/lessee and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. Section 1 et seq. and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intension (sic) of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing, any representations, promises or omissions made in connection with negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle.

Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbi-

tration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The buyer/lessee and the dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where dealer's facility is located.

Defendant filed a motion to compel arbitration and to stay the lawsuit pending arbitration of the various claims. Pursuant to the FAA, 9 U.S.C. § 2, Defendant sought to compel arbitration in accordance with the terms of the Agreement. Plaintiff opposed the motion, arguing that while he did sign the Agreement, he should not be compelled to arbitrate his claims because:

(1) Plaintiff's right to bring a private cause of action pursuant to the TCPA cannot be limited or waived by contract or otherwise;

(2) The FAA is not applicable because that Act only reaches contracts involving interstate commerce, or intrastate commerce having a substantial relation to interstate commerce;

(3) The Agreement is an unenforceable adhesion contract;

(4) The Agreement is unenforceable for lack of consideration and there was no contract to arbitrate; and

(5) Claims under the TCPA are not preempted by the FAA.

Plaintiff filed his own affidavit which stated that at no time while purchasing the van did anyone mention arbitration. He also claimed that when purchasing the van, he "had to sign a series of documents in succession", and it was his understanding that he was required to sign these documents. In his Brief, Plaintiff states he "believed" he had to sign these documents. Plaintiff further stated in his affidavit that he does not remember signing the Agreement, was never told that he was signing one, and was never informed that he was giving up his rights to go to court to have any disputes resolved by a judge or jury.

The Trial Court issued a detailed Memorandum and Order denying Defendant's motion to compel arbitration. The Trial Court concluded that the Agreement encompassed the financing of the van, and therefore Plaintiff's claims were within the scope of the Agreement. The Trial Court also determined that the transaction was "clearly interstate in nature and the FAA applies."[1] Next, the Trial Court ruled that as long as there was consideration supporting the sale of the van, there need not be separate consideration for the related Agreement. The Trial Court also held that the Agreement was not an unenforceable adhesion contract for two reasons. First, because Plaintiff signed the Agreement without reading it was no defense to its enforcement. Second, Plaintiff was not confronted with a "take it or leave it" transaction because he had a meaningful option of obtaining a van elsewhere without signing an agreement to arbitrate.

The remaining portion of the Trial Court's memorandum addressed whether Plaintiff's TCPA claim was amenable to arbitration. Plaintiff argued that his statutory remedies available under the TCPA would be eviscerated by arbitration because he could not obtain injunctive or declaratory relief or bring the claim as a class action. Plaintiff also argued that because his claim was so small, it could not

---

1. Defendant's General Manager, Mitch Cummins, also filed an affidavit. Mr. Cummins' affidavit addresses only whether there was sufficient interstate commerce to implicate the FAA. Plaintiff's argument that there was insufficient or no interstate commerce wisely has not been pursued in this appeal.

be arbitrated effectively because of the costs associated with arbitration. Although the Trial Court stated that claims brought pursuant to the TCPA could be subject to arbitration under the FAA, it nevertheless held that the Agreement in this case was unenforceable because:

(1) The claim involved a small consumer transaction, and no person could proceed on an individual basis. Requiring arbitration would, therefore, deprive Plaintiff of his ability to enforce the TCPA;

(2) Plaintiff and others could not obtain effective declaratory or injunctive relief; and

(3) It was unclear whether the provisions for filing fees, arbitrator costs, and other arbitration expenses may bar an individual plaintiff access to a forum to enforce the TCPA, and the filing fee of the American Arbitration Association appeared to make the cost of proceeding with arbitration "potentially prohibitive" for a small claimant.

Plaintiff appeals the Trial Court's determination that separate consideration was not necessary to support the Agreement, that the Agreement is not an unenforceable adhesion contract, and that TCPA claims in general are arbitrable under the FAA. Defendant appeals the Trial Court's conclusion that under the facts of this case, the Agreement is not enforceable for the three reasons set forth above.

### Discussion

■■■■ A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R.App.P. 13(d); *Brooks v. Brooks,* 992

S.W.2d 403, 404 (Tenn.1999). Review of questions of law is *de novo,* without a presumption of correctness. *See Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

### A. Overview of the Federal Arbitration Act.

■■■■ Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[2]

In *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the United States Supreme Court stated that the basic purpose of the FAA was to overcome the refusal of the courts to enforce agreements to arbitrate. This refusal began in "ancient times" with the English courts and was followed in the American courts. *Dobson,* 513 U.S. at 270, 115 S.Ct. at 838. When Congress passed the FAA in 1925, it was motivated, first and foremost, by a desire to change this anti-arbitration rule and intended for the courts to enforce arbitration agreements which the parties had entered into and to place these agreements upon the same footing as other contracts. *Id.* at 270, 271, 115 S.Ct. at 838.

**2.** On January 25, 2001, a bill was introduced in Congress to exclude consumer credit contracts from the coverage of the FAA. *See* S.

192, 107th Cong. (2001). At the time this Opinion was issued, that bill was still under review by the Committee on the Judiciary.

Since Congress did not want state and federal courts to reach different outcomes about the validity of arbitration, the FAA, if it applies, preempts state law and state courts cannot apply state statutes that invalidate arbitration agreements. *Id.* at 272, 115 S.Ct. at 838. The FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987); *Frizzell Construction Company, Inc., v. Gatlinburg, L.L.C.,* 9 S.W.3d 79, 83 (Tenn. 1999), *cert. denied,* 530 U.S. 1238, 120 S.Ct. 2679, 147 L.Ed.2d 289 (2000). *See also Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 407 (2d Cir. 1959)(in enacting the FAA, Congress "took pains to utilize as much of its power as it could").

■ Notwithstanding the preemptive effect of the FAA, the States do have the power to protect consumers against unfair pressure to agree to a contract which contains an unwanted arbitration provision:

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress' intent.

*Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995) (citations omitted).

■ While the purpose of the FAA is to ensure enforceability of arbitration agreements according to their terms, parties cannot be forced to arbitrate claims that they did not agree to arbitrate. *Frizzell Construction Company, Inc., v. Gatlinburg, L.L.C.,* 9 S.W.3d 79, 84 (Tenn. 1999). Arbitration under the FAA is a matter of consent, and as such, the parties are free to structure an arbitration agreement as they see fit. They can limit which issues will be arbitrated and specify the rules under which the arbitration will be conducted. *Frizzell,* 9 S.W.3d at 84. When parties agree to arbitration, the FAA ensures enforcement of that agreement and the States cannot require a judicial forum for the resolution of a claim that the parties agreed to arbitrate. *Id.* "Therefore, the question essentially becomes 'what the contract has to say about the arbitrability of petitioner's claim. . . .' " *Id.* (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 58, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995)). If the parties agree to arbitrate a claim, then it must be submitted to arbitration even if Tennessee law would prohibit arbitration of that particular claim. *See Frizzell,* 9 S.W.3d at 84. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . . To that end, 'the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.' " *American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 92 (4th Cir.1996) (citations omitted). Against this backdrop, we will discuss first the issues appealed by Plaintiff, then the issues appealed by Defendant.

**B. Whether There Was Adequate Consideration to Support the Arbitration Agreement.**

■ Plaintiff claims that the Agreement lacks consideration which is a ground "at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Plaintiff argues that the Agreement does not contain mutuality of promises, and since there is no independent consideration supporting the Agreement, it is unenforceable or revocable. According to Plaintiff, the Agreement took away all of his legal rights, but took nothing from Defendant.

■ In Tennessee, all "contracts in writing signed by the party to be bound ... are prima facie evidence of a consideration." T.C.A. § 47–50–103. The burden of overcoming this presumption of consideration in a validly executed contract is upon the party asserting a lack of consideration. *Atkins v. Kirkpatrick,* 823 S.W.2d 547, 552 (Tenn.Ct.App.1991).

The Agreement provides for *binding* arbitration to settle any dispute arising between the parties as to: (1) the negotiations leading to the sale; (2) the lease of the vehicle; (3) the financing of the vehicle; (4) the terms and provisions of the sale of the vehicle; (5) the lease or financing agreement; (6) the arrangements for financing; (7) the performance or condition of the vehicle, etc. While the above list is not exhaustive, it is nevertheless clear that with this Agreement, *both* parties agreed to be bound by a decision of an arbitrator, and *both* parties agreed to arbitrate the various types of claims set forth in the Agreement. The Agreement specifically states that "either party may demand arbitration." Plaintiff's argument that there was no mutuality of promises ignores the clear import of this Agree-

ment. Defendant is bound by the terms of the Agreement in the same manner as Plaintiff and the promises are, therefore, mutual.

■ Mutuality of promises is "ample" consideration for a contract. A mutual promise "in itself would constitute a sufficient consideration." *Rodgers v. Southern Newspapers, Inc.,* 214 Tenn. 335, 342, 379 S.W.2d 797, 800 (1964). *See also Buraczynski v. Eyring,* 919 S.W.2d 314, 321 n. 6 (Tenn.1996). As stated previously, the Trial Court held that separate consideration to support the Agreement was not needed. We affirm the conclusion of the Trial Court that Plaintiff's argument that there is no consideration is without merit, but we do so not because separate consideration is unnecessary, but because there is adequate consideration to support the Agreement.[3]

## C. Whether The Arbitration Agreement is an Unenforceable Adhesion Contract.

■ Plaintiff argues that the Agreement is an unenforceable adhesion contract and is revocable or unenforceable under Tennessee law. Plaintiff obtained a GED and from the record it does not appear that he has had any further education. In his affidavit, Plaintiff states that when purchasing the van, he "had to sign a series of documents in succession," and it was his understanding that he was required to sign these documents. In his Brief, Plaintiff states he "believed" he had to sign these documents. Plaintiff also claimed that he did not remember signing the Agreement. As set forth above, the Trial Court concluded that the Agreement

---

**3.** Because we conclude that the mutuality of promises contained in the Agreement is "ample" consideration, we need not address whether there was other consideration which may also support the Agreement (e.g. the vehicle itself), or whether any separate consideration is in fact needed at all. *See Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp.,* 878 F.2d 167 (6th Cir.1989)(no separate consideration needed for an arbitration clause contained within a valid contract).

was not an unenforceable adhesion contract for two reasons. Plaintiff's signing the Agreement without reading it does not provide him a defense to its enforcement; and the Agreement was not offered to Plaintiff on a "take it or leave it" basis, and he "had a meaningful option of obtaining a vehicle elsewhere without signing an arbitration agreement."

In *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn.1996), our Supreme Court defined an adhesion contract as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Id.* at 320. The Agreement signed and dated by Plaintiff is a separate, one page document. The top of the document contains the title "ARBITRATION AGREEMENT" in large font, all capital letters, and bold type. The record is unclear whether Plaintiff failed to read the Agreement before signing it, or whether he read it and has since forgotten that he read it. If he did read it, there is no proof in the record that he made any objections to its contents or that he actually was told he must sign the Agreement before he could purchase the van. If he did not read it, then he cannot be heard to complain about its contents. If, without being the victim of fraud, a party

> fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence. *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146 (1950) at 148. *Also see DeFord v. National Life & Accident Ins. Co.*, 182 Tenn. 255, 185 S.W.2d 617, 621 (Tenn.

1945); *Hardin v. Combined Insurance Company*, 528 S.W.2d 31 (Tenn.App. 1975); *Montgomery v. Reserve Life Ins.*, 585 S.W.2d 620 (Tenn.App.1979).

*Giles v. Allstate Insurance Co.*, 871 S.W.2d 154, 156 (Tenn.Ct.App.1993). In *Giles*, this Court noted that to allow a party to admit he signed a contract, but deny it expresses the agreement he made, or to allow him to admit he signed it but did not read it or know its stipulations "would absolutely destroy the value of all contracts." *Giles*, 871 S.W.2d at 157 (citations omitted). Although Plaintiff alleges fraud on the part of Defendant centered around the financing of the van, he does not allege that he signed the Agreement as a result of fraud.

There is little or no doubt that the Agreement is a standard form contract offered to Defendant's customers. The only evidence that Plaintiff had to sign this Agreement on a "take it or leave it" basis is his affidavit in which he states it was his "understanding" that he had to sign the Agreement. He does not allege, however, that he actually was required or told by Defendant that he had to sign the document before he would be sold the van. There is no evidence that Plaintiff questioned Defendant about the contents of the Agreement or did not understand what it meant. *See Wilson Pharmacy, Inc. v. General Computer Corp.*, 2000 WL 1421561, No. E2000–00733–COA–R3–CV (Tenn.Ct.App., Sept. 21, 2000)("[W]e do not believe the statements in the affidavit of Mr. Wilson that he did not know of any other computer corporation which would provide a comparable service, or the conclusory statement that he was offered a standardized contract 'on a take-it-or-leave-it basis' are sufficient to show a contract of adhesion . . . ."). As noted by the Trial Court, Plaintiff could have bought a

van elsewhere if he did not want to agree to the Arbitration Agreement.

In *Buraczynski, supra,* the patients each signed an arbitration agreement prior to receiving medical care from the defendant, Dr. Eyring. Our Supreme Court observed that if the patient did not sign the arbitration agreement (which defendant Eyring admitted was offered on a "take it or leave it" basis), then the patient would lose "the desired service—medical treatment from *Eyring.*" *Buraczynski,* 919 S.W.2d at 320 (emphasis in original). Refusing to sign the arbitration agreement in that case would have terminated the doctor-client relationship and interrupted the course of medical treatment. *Id.*

In the present case, there is no peculiar relationship between the parties as was present in *Buraczynski,* and had Plaintiff refused to sign the Agreement, he would not have suffered potentially harmful results from this refusal as would the patients in *Buraczynski.* There is nothing in the record to suggest that Plaintiff would not have been sold the van even if he refused to sign the Agreement. If Defendant had refused to sell Plaintiff the van, Plaintiff could have gone to another Chevrolet dealership (or any other type of dealership for that matter) and obtained a van elsewhere if he considered the Agreement unacceptable.[4]

 Even if the Agreement is an adhesion contract, this does not end our inquiry because contracts of adhesion still may be enforceable. "Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996). Adhesion contracts which are op-

pressive to the weaker party or which serve to limit the obligations and liability of the stronger party will not be enforced. *Id.* The Agreement signed by Plaintiff in the present case does not limit the liability or obligations of Defendant. The Agreement simply sets forth the various types of claims which the parties agreed to arbitrate and bound both parties to any arbitral decision. Like the arbitration agreement enforced in *Buraczynski,* the Agreement in this case clearly lays out the terms and contains no buried items. It neither contains terms beyond the reasonable expectations of an ordinary person, nor is it oppressive or unconscionable. We find no reversible error in the Trial Court's determination that the Agreement is not an unenforceable adhesion contract.

**D. Whether Claims Pursuant to the TCPA are not Amenable to Arbitration Because They Cannot be Limited or Waived by Contract.**

 The TCPA prohibits the waiving of any rights granted in that statute unless the waiver meets the requirements set forth in T.C.A. § 47–18–113. Plaintiff asserts that the requirements of T.C.A. § 47–18–113 have not been met, and the waiver of his statutory right to have his TCPA claims heard in a judicial forum is therefore invalid. T.C.A. § 47–18–113 provides, in relevant part, as follows:

(a) No provision of this part may be limited or waived by contract, agreement, or otherwise, notwithstanding any other provision of law to the contrary . . .

\* \* \* \*

(c)(1) No other right or benefit conferred on consumers by any other provi-

---

**4.** Plaintiff does not contend that he would have been unable to purchase a van elsewhere

because Defendant was the only dealership that would offer him financing.

sion of this code may be waived or otherwise varied except as provided for in this section.

(2) Any waiver of a right or benefit described in this subsection must be knowingly and intelligently made.

(3) The competence of the consumer, the consumer's actual knowledge of the rights or benefits being waived, or lack thereof, the manner in which the right or benefit was pointed out to the consumer at the time of the consumer transaction, the nature of the deception or coercion practiced upon the consumer, the nature and extent of the legal advice received by the consumer, and the value of consideration received are relevant to the issue of whether the waiver was knowingly and intelligently made.

(4) If the consumer was not specifically informed of the effect of the waiver and did not specifically waive such consumer's rights or benefits at the time of the consumer transaction, the party claiming waiver shall have the burden of establishing that the waiver was knowingly and intelligently made.

T.C.A. § 47–18–109 provides that any person who suffers an ascertainable loss as a result of an unfair or deceptive act may bring an action in a court of competent jurisdiction. Plaintiff argues that if the Agreement is enforced, it would be a contract wherein he waived his right to a judicial forum under T.C.A. § 47–18–109, a result which is prohibited by T.C.A. § 47–18–113.

Plaintiff's argument is in direct conflict with several decisions of the United States Supreme Court. For example, in *Perry v. Thomas*, 482 U.S. 483, 491, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987), the Supreme Court held that a California statute requiring litigants to be provided a judicial forum for resolving wage disputes "must

give way" to Congress' intent to provide for enforcement of arbitration agreements with the FAA. Likewise, in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court held that the California Franchise Investment Law which required judicial consideration of claims brought pursuant to that statute was preempted by the FAA. In so doing, the Supreme Court stated that "[i]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Keating*, 465 U.S. at 10, 104 S.Ct. at 858. Plaintiff's argument is not one that would invalidate this arbitration agreement "upon such grounds that exist at law or equity for the revocation of any contract." *Dobson*, 513 U.S. at 281, 115 S.Ct. at 843. Rather, we would be using the TCPA as a basis for ignoring any arbitration agreement subject to that law. Such a holding would give to Tennessee the power to require a judicial forum for the resolution of claims arising under the TCPA even though the contracting parties had agreed to resolve any such claims by arbitration. This is exactly what is prohibited by the FAA. *Id. See also Lawrence v. Comprehensive Business Services Co.*, 833 F.2d 1159, 1162 (5th Cir.1987)(the "Texas Public Accountancy Act of 1979 is not a ground that exists at law or in equity for the revocation of any contract, and it cannot overcome the strong federal interest in arbitration."). Likewise, the TCPA is not a ground that exists at law or equity for the revocation of any contract, and, therefore, it cannot serve as a basis for defeating the Agreement. Based on these clear holdings by the United States Supreme Court, Plaintiff's argument that he cannot

"waive" his right to have a TCPA claim heard in a judicial forum must fail.

It is important to note that nowhere in the Agreement did Plaintiff actually waive any substantive rights he may have under the TCPA. Plaintiff, instead, agreed to submit those claims described in the Agreement to an arbitral forum. *See Rodriguez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 481, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989)("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.") (citations omitted).

Plaintiff relies on this Court's decision in *Brown v. KareMor International, Inc.,* No. 01A01–9807–CH–00368, 1999 WL 221799 (Tenn.Ct.App., April 19, 1999), *permission to appeal granted* Jan. 18, 2000, for the proposition that TCPA claims are not subject to arbitration. Initially, we note that the *KareMor* opinion was discussing the Tennessee Uniform Arbitration Act, T.C.A. § 29–5–301, and not the FAA, so matters relating to preemption were not at issue. In *KareMor,* this Court concluded that the plaintiff's TCPA claim was not subject to arbitration because it was not within the scope of the arbitration agreement. In other words, the parties had not agreed to arbitrate that claim. We did not hold that TCPA claims cannot be arbitrated. The agreement to arbitrate in this case is much broader than the one in *KareMor,* and the claims asserted by Plaintiff herein are unquestionably contained within the scope of what the parties agreed to arbitrate. Plaintiff agreed to arbitrate, among other things, "all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing . . . ." The claims asserted by Plaintiff all center around the financing agreement and its terms and, therefore, he agreed to arbitrate the claims which are asserted in the Complaint.

To the extent the TCPA prohibits arbitration because it is an unlawful waiver of Plaintiff's right to proceed in a judicial forum, the TCPA is preempted by the FAA. We find no reversible error in the Trial Court's determination that TCPA claims are amenable to arbitration under the FAA.

As to Plaintiff's arguments on appeal, we conclude that: (1) Plaintiff agreed to arbitrate the claims set forth in the Complaint; (2) the Agreement is supported by adequate consideration; (3) the Agreement is not an unenforceable adhesion contract; and (4) Plaintiff's TCPA claim is amenable to arbitration. We now turn to Defendant's arguments on appeal and address the Trial Court's holding that the Agreement in this case was unenforceable.

**E. Whether the Costs Associated with Arbitration Render the Arbitration Agreement Unenforceable.**

The Trial Court concluded that arbitration costs would bar an individual plaintiff access to a forum because the costs of arbitration were "potentially prohibitive" for a small claimant. In the Agreement, the parties agreed to utilize the Commercial Rules of the American Arbitration Association ("AAA"). As noted by Plaintiff in his brief filed in this appeal, the Trial Court properly took judicial notice of the Commercial Rules of the AAA. We likewise take judicial notice of those Commercial Rules of the AAA as referenced by the Trial Court in its Memorandum Opinion. *See* Tenn.R.App.P. 13(c).

While an initial filing fee may have to be advanced by a plaintiff in a claim involving a small consumer transaction, Rule R–45 of the Commercial Rules allows the arbitrator to assess fees, expenses, and compensation of the arbitrator in a manner deemed appropriate by the arbitrator. A successful plaintiff, therefore, could have all of the "potentially prohibitive" costs shifted to the defendant. Rule R–45 also permits the arbitrator to award attorney's fees to a successful plaintiff who arbitrates a TCPA claim because an award of attorney's fees is authorized by law. *See* T.C.A. § 47–18–109(e)(1). The arbitrator can also assess costs as he or she sees fit for expenses of the arbitration, including the arbitrator and witnesses. Rule R–52. For all practical purposes, an award of costs, expenses, and attorneys, fees are on the same footing in this case regardless of whether the parties arbitrate the claim or proceed in a court of law. Even if the Commercial Rules of the AAA specifically did not allow a successful plaintiff to recover costs, etc., these items could nevertheless be recovered by Plaintiff in arbitration because they are part of his statutory claim pursuant to the TCPA. *See* T.C.A. § 47–18–109(e)(1)(authorizing an award of costs and attorney's fees to a successful plaintiff).

█ In *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the United States Supreme Court decided whether an agreement to arbitrate is unenforceable because it says nothing about the costs of arbitration. While the Court recognized that the existence of large arbitration costs could preclude a litigant from vindicating a statutory right in an arbitral forum, the plaintiff in *Randolph* had not

met her burden of proving that she would have to bear such costs if she went to arbitration. *Randolph,* 121 S.Ct. at 522. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* In the present case, Plaintiff has failed to meet this burden. While the initial filing fee for arbitration may indeed be higher to Plaintiff, this in and of itself is not sufficient to make utilization of the agreed upon forum impracticable in light of the fact that this cost can be fully recouped if Plaintiff is successful.[5] Our conclusion might be different had the Agreement prohibited shifting of these costs or contained some language requiring Plaintiff to be responsible for all or a disproportionate share of the costs of arbitration, but that is not the situation here. There is no proof that the cost of arbitration in this case would be any greater than the cost of litigation in a court, notwithstanding the fact that Plaintiff's claims may be relatively small. *See, e.g., Circuit City Stores, Inc., v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 1313, 149 L.Ed.2d 234 (2001)("Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts."). We conclude that the Trial Court erred when it determined that the cost of arbitration in this case was a basis for not enforcing the Agreement.

**F. Whether the Unavailability of Class Action Relief Renders the Arbitration Agreement Unenforceable.**

---

5. Rule R–51 also permits deferral or reduction of administrative costs in the event of

extreme hardship.

The Trial Court concluded that Plaintiff's claim involved a small consumer transaction and no person could proceed with arbitration on an individual basis. According to the Trial Court, requiring arbitration would deprive Plaintiff of his ability to enforce the TCPA. Although not entirely clear, it appears that the Trial Court's conclusion was that Plaintiff would be deprived of his ability to enforce the TCPA because he could not maintain a class action through arbitration.

Plaintiff relies on a decision by the United States District Court for the Western District of Michigan in *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F.Supp.2d 1087 (W.D.Mich.2000). In *Lozada*, the District Court refused to enforce an arbitration agreement because of the unavailability of class action relief, which that Court concluded violated both the Congressional intent of the federal Truth in Lending Act ("TILA") and the legislative intent behind the Michigan Consumer Protection Act. The *Lozada* Court noted that several other federal district courts had refused to enforce arbitration clauses pursuant to the TILA because they contravened the Congressional intent to encourage compliance with that statute through the availability of class actions. *Lozada*, 91 F.Supp.2d at 1104–05 (citing, *inter alia*, *Johnson v. Tele–Cash, Inc.*, 82 F.Supp.2d 264, 270 (D.Del.1999), *rev'd sub nom. Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir.2000), *cert. denied sub nom. Johnson v. Tele–Cash, Inc.*, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001)).

In *Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir.2000), *cert. denied sub nom. Johnson v. Tele–Cash, Inc.*, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001), the United States Court of Appeals for the Third Circuit reached a different conclusion. That Court noted that "[h]aving made the bargain to arbitrate, the party should be held to it unless *Congress* itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 370 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985)(emphasis added)). The *Johnson* Court noted that most of the federal district courts that had decided this issue favored the view that the TILA did not preclude the pre-dispute selection of an arbitral forum notwithstanding the unavailability of a class action procedure. *Johnson*, 225 F.3d at 370 (citing, *inter alia*, *Sagal v. First USA Bank, N.A.*, 69 F.Supp.2d 627 (D.Del.1999)). The *Johnson* Court reached its conclusion that the arbitration agreement could be enforced without the availability of class relief for several reasons, including the fact that the individual plaintiff could still effectively vindicate his statutory claim in the arbitral forum.

We agree with the result reached by the Third Circuit in *Johnson*. In the present case, Plaintiff can vindicate his TCPA claims effectively through arbitration regardless of whether class action relief is available. As already stated, the *Lozada* Court concluded that not only would the Congressional intent behind the TILA be violated if a class action was prohibited, but so would the legislative intent behind the Michigan Consumer Protection Act. In our opinion, whether the unavailability of class action relief would violate the intent of a *State* legislature is not a relevant consideration when determining whether arbitration is required under the FAA. In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the United States Supreme Court stated that:

> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration

Act: they must be part of a written maritime contract or a contract "evidencing a transaction involving commerce" and such clauses may be revoked upon "grounds as exist at law or in equity for the revocation of any contract." *We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under State law.*

*Keating,* 465 U.S. at 10, 11, 104 S.Ct. at 858 (footnote omitted). If the Congressional intent behind a federal statute such as the TILA evinces an intention to preclude a waiver of judicial remedies for the statutory rights at issue, then there is no federal preemption issue. This is, however, different from looking to the intent of the Tennessee Legislature behind the TCPA. Even if we were to conclude that the Tennessee Legislature specifically intended on providing class action relief under the TCPA, the Supremacy Clause of the Federal Constitution would preclude us from invalidating an arbitration agreement otherwise enforceable under the FAA simply because a plaintiff cannot maintain a class action. *See Frizzell Construction Company, Inc., v. Gatlinburg, L.L.C.,* 9 S.W.3d 79, 84 (Tenn.1999)("If the parties in this case agreed to arbitrate the claim of fraudulent inducement, then despite such a prohibition under Tennessee law, the claim must be submitted to arbitration."). *See also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 32, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991)(But "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [Age Discrimination in Employment Act] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred."). We also note that the Trial Court had not certified any class. At most, Plaintiff had only a possibility of litigating a class action with no guaranty that the Trial Court ever would certify a class in this lawsuit. We conclude that the Trial Court erred when it determined that the unavailability of class action relief in arbitration was a valid basis for not enforcing the Agreement.

**G. Whether Injunctive Relief Would be Available in the Arbitration of Plaintiff's Claims.**

 The Trial Court concluded that Plaintiff could not obtain effective declaratory and injunctive relief with arbitration and, therefore, he could not be forced to arbitrate his TCPA claims. We disagree because Plaintiff can obtain injunctive relief in arbitration. An arbitration agreement can restrict the type of relief which an arbitrator can grant. The availability of injunctive relief could also be affected by a choice of law provision contained within an arbitration agreement. The Agreement in this case does not restrict the type of relief that can be granted. The parties agreed that the Commercial Rules of the AAA would apply, and these rules likewise do not restrict the type of relief which is available. Rule R–45 provides that the "arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."

In *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the United States Supreme Court rejected a similar argument advanced by Plaintiff herein and observed that injunctive relief can be available in arbitration. The Supreme Court stated:

It is also argued that arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for broad equitable relief

and class actions. As the court below noted, however, arbitrators do have the power to fashion equitable relief. 895 F.2d, at 199–200. Indeed, the NYSE rules applicable here do not restrict the types of relief an arbitrator may award, but merely refer to "damages and/or other relief." ... Finally, it should be remembered that arbitration agreements will not preclude the *EEOC* from bringing actions seeking class-wide and equitable relief.

*Id.* at 32, 111 S.Ct. at 1655. In *Gilmer*, the United States Court of Appeals for the Fourth Circuit explained that even though arbitrators may lack the full breadth of equitable discretion possessed by the courts to go beyond the relief accorded to individuals, "[s]o long as arbitrators possess the equitable power to redress individual claims of discrimination, there is no reason to reject their role in the resolution of ADEA disputes." *Gilmer*, 895 F.2d 195, 199 (4th Cir.1990), *affirmed,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). *Accord, Marsh v. First USA Bank, N.A.,* 103 F.Supp.2d 909, 924 (N.D.Tex.2000)("[C]ontrary to Plaintiff's contention, an arbitrator may order injunctive relief if allowed to do so under the terms of the arbitration agreement.... Clearly, then, Plaintiffs may obtain injunctive relief along with statutory damages if they are successful on their claims. Accordingly, Plaintiffs' statutory rights will be adequately preserved in arbitration, even in the absence of a class action.").

In *Lee v. Chica,* 983 F.2d 883 (8th Cir. 1993), *cert. denied,* 510 U.S. 906, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993), the United States Court of Appeals for the Eighth Circuit held that punitive damages could be awarded by the arbitrator based on the facts of that case. In reaching this conclusion, the Eighth Circuit stated that when the choice of law provision in an arbitration agreement incorporates the rules of the AAA, "some circuits have held, and we agree, that AAA arbitrators may grant any remedy or relief including punitive damages." *Id.* at 887.

The Agreement in the present case does not restrict the availability of injunctive relief in arbitration. The TCPA specifically allows for injunctive relief, and Plaintiff's statutory claim for injunctive relief is within the scope of the Agreement. Plaintiff and Defendant agreed to utilize the Commercial Rules of the AAA which authorizes "any remedy or relief that the arbitrator deems just and equitable." It necessarily follows, as a matter of federal law, that injunctive relief can be awarded by the arbitrator in this case.[6] Since injunctive relief is available to Plaintiff to address his individual TCPA claims, the Trial Court erred when it concluded that the unavailability of injunctive relief rendered the Agreement unenforceable.

Finally, we note that T.C.A. § 47–18–106 gives the Division of Consumer Affairs in the Department of Commerce and Insurance the power to investigate any alleged violations of the TCPA. T.C.A. § 47–18–108 further gives the Attorney General the power to seek injunctive relief in a court of competent jurisdiction whenever the Division of Consumer Affairs "has reason to believe that any person has engaged in, is engaging in, or, based upon information received from another law enforcement agency, is about to engage in any act or practice declared unlawful ...." Plaintiff's agreeing to arbitrate his claims in no way prevents the Attorney General from

---

**6.** We conclude only that injunctive relief is available and express no opinion on whether Plaintiff is entitled to such relief.

seeking injunctive relief against Defendant in a court of competent jurisdiction.

### Conclusion

The decision of the Trial Court is affirmed in part and reversed in part. This matter is remanded to the Trial Court for the entry of an order enforcing the Agreement and for further proceedings as necessary, if any, consistent with this Opinion. Costs of this appeal are taxed to the Appellee, James C. Pyburn.