# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 10, 2010 Session

## JIMMY E. HOLT ET AL. v. SHAWN R. WILMOTH

**Appeal from the Chancery Court for Jefferson County**
**No. 07-075      Rex Henry Ogle, Judge**

**No. E2009-00876-COA-R3-CV - FILED APRIL 30, 2010**

Shawn R. Wilmoth ("the Buyer") approached Jimmy E. Holt about buying a building Mr. Holt owned jointly with his wife Betty L. Holt (collectively "the Sellers"). The Sellers advised they were only willing to sell the building if they could also sell the inventory from their lamp business that was stored in the building. The Buyer agreed to purchase the building and the inventory. The purchase of the inventory was accomplished through a promissory note in the amount of $250,000. Subsequently, the Buyer paid $150,000 toward the note but refused to pay the balance of $100,000. The Sellers filed suit to collect the balance owed on the note. In his answer and counterclaim, the Buyer alleged that Sellers represented the value of the goods to be $500,000, but that he only realized $65,000 through liquidation of the goods and that $65,000 was the true value of the inventory. The Buyer alleged that the figure he was given constituted an intentional misrepresentation and, when compared to the amount he recovered from the goods, amounted to a failure of consideration. The Buyer asked to recover damages that included the difference in the amount he paid on the note and the amount he realized out of the liquidation, that difference being $85,000. After a bench trial, the trial court determined that there was no intentional misrepresentation and dismissed the counterclaim. Nevertheless, the trial court refused to award the Sellers a recovery on the unpaid balance of the note. The court stated that it was leaving the parties where it found them. The Sellers appeal, raising issues; the Buyer, by way of his own issue, challenges the trial court's refusal to award him damages. We reverse and remand the case to the trial court with instructions to enter a judgment in favor of the Sellers and consider their prayer for prejudgment interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Clinton R. Anderson, Morristown, Tennessee, for the appellants, Jimmy E. Holt and Betty L. Holt.

Carl R. Ogle, Jr., Jefferson City, Tennessee, for the appellee, Shawn R. Wilmoth.

**OPINION**

I.

In early 2006, the Buyer was in need of a building in which to house his business of buying and reselling salvage merchandise. He was aware of a warehouse that the Sellers had used in their business, J & B Lamp and Shade. He thought it was suitable for his use. The Buyer approached the Sellers and asked if they were interested in selling their property. The Sellers responded that they would only sell the warehouse building if they could also sell their parts inventory housed in the building. Mr. Holt estimated the value of the inventory at between $450,000 and $500,000. The parties agreed on a price of $585,000 for the building and $250,000 for the inventory. The Buyer did not really want the inventory, but he was willing to buy it to get the building. The Buyer, as a salvage dealer, surmised that even if he could not sell the inventory for its full value, he could recoup the $250,000 he paid for it.

The Buyer wrote up the sales documents, captioned "Option to Purchase Real Estate" and "Option to Purchase Inventory." Technically, the documents did not tie the purchases together, or condition one upon the other, but both the Sellers and the Buyer viewed the sales as related. Accordingly, on April 24, 2006, the Buyer closed on the inventory. Not long thereafter, the Buyer closed on the building. As payment for the inventory, the Buyer executed a promissory note in the amount of $250,000. Even before the closing, the Buyer was given free access to the building. He was allowed to make some installations and alterations to facilitate the new use he would make of the building. He was allowed to view the inventory both with and without his banker. The Sellers offered to do a full physical inventory, an offer the Buyer declined. On the day of closing, the Sellers supplied Buyer with a copy of their last physical inventory ("the list") that reflected a total "cost" of $555,571.68. The list was made an exhibit to the contract, but the parties had already signed the contract.

Even before the closing, the Buyer began marketing the inventory. He sent the list to businesses he thought would be interested in making lamps. He began selling the inventory soon after the closing. He also moved his salvage business into the space and began selling that merchandise. Not long after the closing, one of the Buyer's employees began having problems finding the items reflected on the list and began to question whether the list was

-2-

accurate.  The Buyer asked Mr. Holt to assist and Mr. Holt tried to help find the missing items.  He found some items but there were others he could not find.  Mr. Holt later testified that the rearranging plus the sales of some items made it impossible to trace the inventory. Prior to the sale to the Buyer, the items had been categorized and stored in a manner that they could be found.

Despite the questions concerning the inventory and whether items on the list were missing, the Buyer paid the Sellers $150,000 toward the note.  The Buyer testified that $150,000 was all his banker would advance on the inventory, and that he later called Mr. Holt to his office for a meeting to try to resolve the outstanding $100,000 owed.  According to the Buyer, he offered the Sellers three choices.  They could keep the $150,000 and take any unsold inventory in satisfaction of the $100,000 owed on the note; they could keep the $150,000 and call everything even and let him dispose of the inventory to free up the space in his building; or they could let a third party decide how to resolve the matter.  Under any of the three proposals, the Buyer stated he would not be willing to pay the $100,000 balance. According to the Buyer, Mr. Holt left the meeting upset.

When it became clear to the Sellers that the Buyer was not going to pay the balance owed on the note voluntarily, they filed this action.  The Sellers demanded the balance due of $100,000 plus prejudgment interest.  In his answer and counterclaim, the Buyer alleged that the inventory stated by the Sellers to be worth $500,000 was only worth $65,000.  The Buyer alleged that the note should be cancelled on the grounds of failure of consideration and intentional misrepresentation.  The Buyer sought return of $85,000 which represents the difference in what the inventory was worth, according to the Buyer, and the amount he paid on the note.  The Buyer also demanded as damages the rental value of the space occupied by the inventory, plus the cost of disposing of the inventory.  The Buyer alleged that the misrepresentation was malicious and that it justified punitive damages in the amount of $750,000.

The court heard the case without a jury, and announced its verdict as follows:

> . . . I guess as far as assigning fault, if you will as far as how this all came down; [the Buyer] could have protected himself by doing an inventory.  It would have taken a little bit more time there's no question about that.
>
> But I just can't imagine buying this amount of personal property without doing an inventory of it, even if you didn't want to be in the business. . . .

But when the [Sellers] provide a list of inventory and place a five hundred thousand dollar ($500,000) value on it . . . and all I'm talking about is the documents that they provided. And I think those were in good faith.

And . . . I don't think the [Sellers] intentionally meant to do anything. I just think everybody got in a hurry and here we are.

First of all as to the [counterclaim], the Court does find that it is basically a claim based upon intentional fraud. There being none, the Court dismisses it.

As to the original Complaint the Court finds that at least in part the [Buyer] relied upon the inventory provided in his purchase

Again . . . he just wanted to cut the deal on the land, but then I can see his point of view that "I really don't want that stuff but I'll take it . . . to get the land."

Again, what may be more valuable to somebody in that business may not be as valuable to somebody who[] is buying it.

I don't think that the [Buyer] took the best steps. Certainly he has liquidated his damages to some extent. But the best course of action would have been to have held onto those until we got to court. . . . And so I think he again is some of the cause of his own misery.

\* \* \*

But to have this [Buyer] pay the entire amount of this purchase price based on everything else in this case I think would be unjust.

And so . . . what I'm going to do is leave the Parties right where they are.

In accord with its opinion announced from the bench, the court entered a judgment dismissing both the original complaint and the counterclaim and taxing costs equally to the

Buyer and the Sellers.  As previously noted, the Sellers filed this appeal but the Buyer also challenges the judgment, which, of course, he has a right to do.  *See* Tenn R. App. P. 13(a).

## II.

The Sellers raise the following issues:

> Did the [Buyer] prove an actionable claim for fraudulent misrepresentation?

> Did the [Buyer] prove failure or inadequacy of consideration as a defense to payment on a promissory note when [the Buyer] . . . had multiple opportunities to inspect the inventory before purchasing it?

> May a court rely on the "equities" . . . to relieve [the Buyer] of his contractual obligation when the [Buyer] accepted and sold the purchased goods . . . ?

The Buyer raises the issue of whether the trial court erred in dismissing his counterclaim without allowing him to recover the difference between what he paid on the note and what he recovered from the inventory plus the cost of disposing of the inventory.

## III.

A recent articulation by the Supreme Court of the standard by which we review a trial court's findings of fact and conclusions of law is as follows:

> Where, as here, the trial court sits without a jury, we review findings of facts de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); ***In re Adoption of A.M.H.,*** 215 S.W.3d 793, 809 (Tenn. 2007).  Questions of law . . . are reviewed de novo with no presumption of correctness.  ***Adoption of A.M.H.,*** 215 S.W.3d at 809; ***Kirkpatrick v. O'Neal,*** 197 S.W.3d 674, 678 (Tenn. 2006).

*In re Angela E.,* 303 S.W.3d 240, 246 (Tenn. 2010). As to issues on which the trial court makes no factual findings, we simply review *de novo* to determine where the preponderance of the evidence lies. *Kesterson v. Varner*, 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005).

IV.

The Buyer's case for intentional misrepresentation, both in the trial court and in this court, is that he was told the warehouse contained $500,000 of inventory, which he was only able to sell for $65,000. Therefore, he wants the court to infer that the Sellers intentionally inflated the inventory to deceive him and did deceive him. "Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out." *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995) (*quoting Blevins v. Livesay*, 221 S.W.2d 106, 109 (Tenn. Ct. App. 1949)). The party alleging fraudulent misrepresentation has the burden of proving all the elements of its case. *Id.* In this case, the Buyer must therefore not only prove that the inventory figure was inaccurate, but that the Sellers knew it was inaccurate. *See Spectra Plastics, Inc. v. Nashoba Bank*, 15 S.W.3d 832, 840-41 (Tenn. Ct. App. 1999)(reciting elements). Further, the Buyer must prove that he reasonably or justifiably relied on the misrepresentation. *Id.* The facts in this case simply do not support an inference of fraud.

The testimony in this case shows that the paper inventory supplied to the Buyer was an existing document that the Sellers willingly supplied rather than one created for the sale. While the Buyer questioned at trial whether it would have been practical for him to do his own inventory, the Sellers' testimony that they offered to do a physical inventory went un-controverted. It is unlikely the Sellers would have been so willing to do an updated physical inventory if they had known it would have shown the value to be only a fraction of the earlier inventory. It is also unlikely the Buyer would have declined the Sellers' offer to do a physical inventory if the Sellers' valuations were a material factor to him. The Buyer is a college-educated businessman with experience in buying salvage goods and marketing them at a discount. He admitted that his thought process included the possibility that he might need to sell the inventory for $250,000 – a figure far less than the $500,000 that he claimed to have relied upon in making the purchase. The record strongly supports a finding that time and use of the building were more important to the Buyer than the inventory. The Buyer acknowledged that he was only willing to purchase the inventory because he wanted the building. He also admitted that he needed the space for his own business and in fact claimed damages for loss of use of the space. Thus, there is every reason to believe that with the pressure of time to free the space in the building and the tendency to sell salvage materials at a deep discount, the inventory was sold for an amount that would not have necessarily

borne any resemblance to the "cost" figure reflected on the inventory provided, or the amount the inventory was worth to someone in the position of the Sellers  This is especially true in light of the Buyer's testimony that he hauled much of the merchandise to the dump or sold it for scrap metal prices.  The Buyer admitted on cross-examination that he could not identify what was missing or overvalued.  At most, he could identify the items that he did sell.  In short, the evidence weighs against a finding of bad intent on the part of the Sellers and justifiable reliance on the part of the Buyer.  We conclude that the evidence does not preponderate against the trial court's finding that there was no intentional fraud.

It is equally clear to us that this case does not present a failure of consideration even if the goods were sold for every penny they were worth.  If so, they were worth $65,000 of consideration.  In other words, the Buyer did not give the $250,000 note in return for nothing – he gave it for $65,000 worth of lamp parts even though he allegedly thought he was getting $500,000 worth of parts he might have to sell for $250,000.  The law distinguishes a complete lack of consideration, or failure of consideration, from inadequate consideration.  *Griffin v. Simmons*, 61 Tenn. 19, 1872 WL 4174 at \*1 (Tenn. December Term 1872).  The former is recognized as a defense, but the latter is not.  *Id.* at 2; *compare* Tenn. Code Ann. § 47-50-104 (2001)(recognizing "want or failure" of consideration as a defense), *with* Tenn. Code Ann § 47-50-103 (2001)(recognizing a presumption of consideration to support any written contract); *see also* *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001)(rejecting argument that the plaintiff "took nothing from [d]efendant").  As the Supreme Court stated long ago in *Danheiser v. Germania Sav. Bank & Trust*, 194 S.W. 1094, 1096 (Tenn. 1917), it is not necessary that the "benefit conferred or the detriment suffered by the promisee . . . be equal to the responsibility assumed.  Any consideration, however small, will support a promise."  Accordingly, we hold that the evidence preponderates in favor of a finding that there was consideration to support the note.[1]

The final issue raised by the Sellers is whether the trial court erred in refusing to enforce the note, after the Buyer had sold the goods, based on what the trial court viewed as the "equities" of the case.  The Sellers tie their argument to the Uniform Commercial Code ("the UCC") and an alleged acceptance, by the Buyer, of the goods through failure to promptly reject the goods as non-conforming and by selling the goods.  *See* Tenn. Code Ann. §§ 47-2-606 and 47-2-607 (2001).  We are unwilling to state a blanket rule that a trial court may never observe the equities of a UCC transaction.  We are inclined to believe that the Buyer's actions, *i.e.*, selling the goods without providing any written notification that he was

---

[1]The trial court did not make a finding of fact with regard to the sufficiency of the consideration. Accordingly, we review *de novo* and make our own determination with regard to the propondance of the evidence.  *Kesterson*, 172 S.W.3d at 566.

dissatisfied with what he received, constituted an acceptance of the goods. *See* ***I.N. Price Co. v. Hamilton Produce Co.***, 8 (Higgins) Tenn. Civ. App. 467, 472 (1917) (selling is an act of acceptance). However, we do not tie our holding solely to the premise that sale of the goods constituted an acceptance that defeated the action.

Rather, we base our holding on the lack of pleadings to support the trial court's judgment. There are no bases in the pleadings that would relieve the Buyer of his obligations other than intentional misrepresentation and lack of consideration. We have already held that the Buyer established neither of these grounds. We recognize that the Buyer's *brief* states that "[t]his case deals with Fraudulent Misrepresentation, Negligent [Mis]representation, Failure of Consideration and Mutual Mistake," and that he argues therein that we could uphold the trial court on "any of these four principles." We cannot agree. The pleadings do not allege negligent misrepresentation or mutual mistake. "The failure to assert a claim or defense in a timely manner is generally deemed to amount to a waiver of the right to rely on the claim or defense at trial." ***Castelli v. Lien***, 910 S.W.2d 420, 429 (Tenn. Ct. App. 1995). Of course, a trial court can allow a party to amend the pleadings, even after trial, but there was no such amendment or motion to amend in this case. Accordingly, there are no equitable grounds pleaded in this case upon which to base the relief that the trial court allowed the Buyer. We hold, therefore, that it was error for the trial court to refuse to enforce the note against the Buyer based solely on what the court viewed as the "equities" of the case, equities that were not pleaded by the Buyer.

The Sellers argue that the trial court erred in not awarding prejudgment interest. It appears to this Court that the trial court did not address the issue simply because it refused to enforce the note. There is no reason to believe the trial court will not consider and apply the law applicable to prejudgment interest now that we have held the Seller is entitled to recover the balance owed on the note. We will therefore leave the issues of entitlement and rate of interest to the trial court on remand.

Based on our holdings above, it should be clear that there was no error in the trial court's dismissal of the counterclaim. Therefore, there is no basis upon which to sustain the Buyer's argument that he should have been awarded a judgment for what he paid on the note less the amount he recovered through the sale of the inventory. The same is true for the Buyer's argument that he was damaged by loss of use of the space that the inventory occupied.

V.


The judgment of the trial court is reversed. Costs on appeal are taxed to the appellee, Shawn R. Wilmoth. This case is remanded to the trial court, pursuant to applicable law, for entry of a judgment in favor of the appellants, Jimmy E. Holt and Betty L. Holt, for the balance owed on the note, and for consideration of the facts pertaining to the issue of prejudgment interest in light of the applicable legal principles.


_____
CHARLES D. SUSANO, JR., JUDGE