IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 11, 2002 Session

## EDWARD HOWELL, SR., Executor of the Estate of ORANGIE E. HOWELL, v. NHC HEALTHCARE-FORT SANDERS, INC., *ET AL.*

**Direct Appeal from the Circuit Court for Knox County**
**No. 2-644-01      Hon. Harold Wimberly, Circuit Judge**

**FILED FEBRUARY 25, 2003**

**No. E2002-01321-COA-R3-CV**

---

The Trial Court refused to enforce an Agreement for Mediation and Arbitration. On appeal, we Affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

F. Michael Fitzpatrick and Dan D. Rhea, Knoxville, Tennessee, for Appellants.

Richard C. May and Loring E. Justice, Knoxville, Tennessee, for Appellee.

Sadler Bailey and J. Mark Benfield, Memphis, Tennessee and Cameron Jehl, Little Rock, AR, for *Amicus Curiae*.

## OPINION

Defendants' Motion to Compel Mediation and Arbitration pursuant to Tenn. Code Ann. § 29-5-303, was overruled by the Trial Court. We granted an interlocutory appeal, pursuant to Rule 9, Tenn. R. App. P.

This action was filed by the executor of the Estate of Orangie Howell, who died while residing in the NHC -Ft. Sanders Nursing Home in Knoxville. The Complaint charges the nursing home with abuse and neglect, and infliction of physical suffering and mental anguish upon the deceased, *inter alia*.

The defendants insist the admitting agreement signed by the deceased's husband is enforceable, and requires that these claims are subject to mediation and arbitration, because the agreement so provides.

The Trial Court conducted an evidentiary hearing on the Motion, and Paula Larkins, who presented the admitting contract to Howell, testified that the contract signed by Howell was the only one used by the nursing home at the time, and that a patient or their legal representative was required to sign the contract before being admitted to the facility. She testified that she remembered meeting with Howell and one or both of his daughters, and that she did not read the contract verbatim, but paraphrased it to Howell. She did not ask Howell to read the agreement, and she did not ask him if he could read.

Larkins testified that she explained the dispute resolution procedure to Howell, and that she explained that the arbitration was binding. She did testify that she did not explain to Howell that by signing the contract, he was giving up his wife's right to a jury trial. She further testified that Ms. Howell was too sick to return home from the hospital, and Mr. Howell had to sign the contract in order to have Ms. Howell admitted to the nursing home. Howell's daughter, Constance Davis testified that she accompanied her father to the nursing home, that her father could not read or write, but that it was his decision to make and she and her sister just accompanied him for support and that she understood that the papers had to be signed before her mother could be admitted to the nursing home.

Howell's other daughter testified that she also accompanied her father to the nursing home, and that the nursing home representative went through the paperwork and explained each page to her father. She testified that she did not see the papers and that she did not remember hearing the words "arbitration", "mediation", or "dispute resolution".

Howell testified that he was employed as a roofer for many years, and that he was now retired due to stomach cancer, that he was unable to read or write, but that he could sign his name. He testified that lady at the nursing home "pushed" the documents in front of him and asked him to sign them, and that she did not explain them. He testified that his daughters were there with him, but that they did not look at the document. He testified that he never asked what was in the document, he just knew that he was supposed to be signing a contract to get his wife in the nursing home, and he did not remember the lady at the nursing home telling him to come to her if he had any problems or concerns, and he did not remember anyone using the term "arbitration".

Howell testified he had never heard of arbitration, did not know what it was, and that it was not explained to him. He testified that the nursing home's representative never told him he was waiving his wife's right to a jury trial.

The Trial Court found that Ms. Larkins tried to explain the contract to Mr. Howell, but that she testified that she never explained to him that by signing the contract he was giving up his right or his wife's estate's right to a jury trial. The Trial Court found that the situation was sort

of an emergency, or at least something that had to be done, and that the agreement was not enforceable against Mr. Howell. The Court then entered the Order denying defendants' Motion to arbitrate.

Appellants argue that the Trial Court erred in failing to compel arbitration based upon the arbitration clause contained in the admission agreement. The Trial Court ruled that the arbitration provision was not enforceable, based upon the following findings:

> 1) Mrs. Howell needed the care of a nursing home,
> 2) Mr. Howell and his daughters went to the NHC nursing home and were presented with the admission agreement,
> 3) The agreement provides for exclusive resolution of disputes by arbitration and mediation,
> 4) Mr. Howell is unable to read or write, and one would suspect this in talking to him,
> 5) The nursing home representative chose to explain the agreement to Mr. Howell rather than handing it to him to read for himself,
> 6) The nursing home representative said she explained mediation and arbitration, but said she never explained that he was giving up his right to jury trial,
> 7) Mr. Howell had to sign the agreement to have his wife admitted to the nursing home.

Tennessee has adopted the Uniform Arbitration Act, which provides in part:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract; . . .

Tenn. Code Ann. §29-5-302; *see Buraczynski v. Eyring* , 919 S.W.2d 314 (Tenn. 1996). This provision is substantially the same as that contained in the Federal Arbitration Act, codified at 9 U.S.C. §2. Since there is no dispute that this provision is in the contract which provides that the parties must submit to arbitration, the issue thus becomes whether any grounds exist which would require revocation. Further, while courts are required to give an arbitration agreement "as broad a construction as the words and intentions of the parties will allow", this applies to the scope of the agreement, and not whether grounds exist to deny enforceability of the agreement. *See Urology Associates, P.C. v. Cigna Healthcare of Tenn., Inc.*, 2002 Tenn. App. LEXIS 726 (Tenn. Ct. App. Oct. 11, 2002).

Appellee argues that the Agreement is not enforceable because it was not signed by the decedent and that Mr. Howell was not authorized to sign an agreement waiving her rights. *Citing, Milon, et al., v. Duke University, et al.,* 559 S.E.2d 561 (NC 2002). Appellees raise another interesting argument that a portion of the medicare/medicaid statute dealing with nursing homes,

codified at 42 U.S.C. §1396r(c)(5)(A)(ii), specifically prohibits a nursing home from accepting any additional consideration from a medicare/medicaid patient aside from the standard rate paid by medicare/medicaid, and argue that our case law provides that an arbitration agreement or, indeed, any type of agreement must have consideration to be enforceable and that mutuality of promises can be a sufficient consideration for the same. *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001). Thus, the argument goes that if mutual promises to submit to arbitration are consideration for the agreement, then the agreement would run afoul of the federal statute.

While these arguments are not without appeal, we pretermit consideration because we believe the dispositive issue is set forth in the Trial Court's findings.

In *Buraczynski*, the Supreme Court addressed the issue of the enforceability of an arbitration agreement between a patient and doctor, and discussed the factors which should be analyzed in dealing with this issue. The Court said the agreement in that case was a contract of adhesion because it was offered to the patient on a "take it or leave it" basis, and because the doctor was in a position of greater bargaining power. *Id.* The Court noted, however, that while contracts of adhesion are not favored, the simple fact that the contract was one of adhesion does not necessarily render it unenforceable. *Id.* The Court then observed that enforceability "generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* at 320.

The Court provided examples of arbitration agreements which were considered unconscionable or oppressive to the "weaker" party, such as where the arbitration clause was contained within a clinic admission form and gave the patient no option to revoke the agreement and regain the right to a jury trial. *Id.* at 320, *citing Pepper*, 693 P.2d 1259 (Nev. 1985). The Court stated that "courts are reluctant to enforce arbitration agreements between patients and health care providers when the agreements are hidden . . . and do not afford the patients an opportunity to question the terms or purpose of the agreement. This is so particularly when the agreements require the patient to choose between forever waiving the right to a trial by jury or foregoing necessary medical treatment". *Id.* at 321.

The Court then examined the arbitration agreement at issue in *Buraczynski*, and concluded it was not oppressive or unconscionable because it was a stand-alone, one page contract, with an attached explanation of its purpose that encouraged the patient to ask questions, and which contained a "ten-point capital letter red type, directly above the signature line that 'by signing this contract you are giving up your right to a jury or court trial' on any medical malpractice claim." *Id.* at 321. The agreement also provided that it could be revoked by the patient within thirty days. *Id.*

In *Cooper v. MRM Investment Co.*, 199 F. Supp. 2d 771 (M.D. Tenn. 2002), an arbitration was held unenforceable because the circumstances were such that the employee signed the agreement with the employer and the agreement contained no language stating the employee was giving up her right to a jury trial. That Court recognized that "the waiver of the right to a jury trial must be both knowing and clear". Further, the Court relied upon the fact that the employer had much

-4-

greater bargaining power, and ultimately found that the agreement was oppressive and unconscionable. *Id.*

This Court held in *Brown v. Karemor International, Inc.*, 1999 Tenn. App. LEXIS 249 (Tenn. Ct. App. April 19, 1999), that the reasonableness of the provision could not be determined simply by looking at the agreement itself, and that the defendant who was seeking to enforce the provision had the burden of showing the parties "actually bargained over the arbitration provision or that it was a reasonable term considering the circumstances." *Id.*

The foregoing authorities support the Trial Court's determination that the arbitration clause should not be enforced under the circumstances. The Agreement is eleven pages long, and the arbitration provision is on page ten. Rather than being a stand-alone document, it is "buried" within the larger document. It is written in the same size font as the rest of the agreement, and the arbitration paragraph does not adequately explain how the arbitration procedure would work, except as who would administer it.

The facts surrounding the execution of the agreement militate against enforcement. The Trial Court found Ms. Howell had to be placed in a nursing home expeditiously, and that the admission agreement had to be signed before this could be accomplished. The agreement was presented to Mr. Howell on a "take-it-or-leave-it" basis. Moreover, Mr. Howell had no real bargaining power. Howell's educational limitations were obvious, and the agreement was not adequately explained regarding the jury trial waiver.

The fact that Howell cannot read does not excuse him from a contract he voluntarily signed. *See Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001). But the circumstances here demonstrate that Larkin took it upon herself to explain the contract, rather than asking him to read it, and that her explanation did not mention, much less explain, that he was waiving a right to a jury trial if a claim was brought against the nursing home. As we have observed, the defendant who is seeking to enforce the arbitration provision has the burden of showing the parties "actually bargained over the arbitration provision or that it was a reasonable term considering the circumstances." *Brown.* Given the circumstances surrounding the execution of this agreement, and the terms of the agreement itself, appellant has not demonstrated that the parties bargained over the arbitration terms, or that it was within the reasonable expectations of an ordinary person.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to NHC Healthcare-Fort Sanders, Inc.

_____
HERSCHEL PICKENS FRANKS, J.