Virgil ALLEN, Plaintiff,

v.

TENET HEALTHCARE CORPORA-
TION, d/b/a Tenet Healthsystem Hos-
pitals, Inc., and National Medical
Hospital of Wilson County, Inc., De-
fendants.

No. CIV. 3:04–0217.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 4, 2005.

Martin D. Holmes, Stewart, Estes &
Donnell, Nashville, TN, for Plaintiff.

### MEMORANDUM and ORDER

TRAUGER, District Judge.

The defendants have filed a Motion to
Dismiss and Refer Claims to Binding Arbi-
tration (Docket No. 18), to which the plain-
tiff has responded in opposition (Docket
No. 21).

#### Factual Background

The plaintiff, Virgil Allen, held the posi-
tion of radiological technologist at the
University Medical Center in Lebanon,
Tennessee, from March 4, 1996 until ap-
proximately November 1, 2003. The Uni-
versity Medical Center ("UMC") is owned
by defendant Tenet Healthcare Corpora-
tion and has approximately 700 employ-
ees.

On July 16, 1996, the plaintiff attended a
training meeting at UMC that was con-
ducted by Pam Tomlinson, the Assistant

Director of Human Resources. The parties agree that, at this meeting, copies of the Employee Handbook were distributed, and employees were asked to sign the Employee Acknowledgment Form at the end of the Employee Handbook and turn it in at the end of the meeting. Ms. Tomlinson maintains that, during this training session, she went over the steps of the Fair Treatment Process and "informed employees that the final step of mandatory arbitration would result in a decision which would be final and binding on both the employee and the company." (Docket No. 19, ¶ 8) The plaintiff, on the other hand, maintains that the Fair Treatment Process was not discussed and that employees were not "advised that by signing the Employee Acknowledgment Form, we were agreeing to arbitrate any claims for disputes related to our employment or the termination of our employment with Tenct." (Docket No. 23, ¶ 5) The plaintiff maintains that he "had no time to read the Acknowledgment prior to signing it" and that he turned it in at the end of the meeting. (*Id.*, ¶ 4) The plaintiff does not dispute that the Acknowledgment Form attached to the defendant's motion contains his signature.[1] The plaintiff does not contest that he left the meeting with the Employee Handbook, and the record reflects that an identical copy of the Employee Acknowledgment Form that the plaintiff turned in remained in the handbook.

On March 15, 2004, the plaintiff filed his Complaint in this court, alleging violations of Title VII and 42 U.S.C. § 1981 (Docket No. 1), claims that the defendant asserts are covered by the agreement to arbitrate employment claims. The plaintiff resists the enforceability of the agreement to arbitrate on several grounds.

*Analysis*

Both parties agree that the enforceability of an arbitration agreement is to be determined under applicable state law, here Tennessee law. *Cooper v. MRM Investment Co.*, 367 F.3d 493, 499 (6th Cir. 2004).

The plaintiff maintains, first, that there was no mutual assent or meeting of the minds with regard to entering into an agreement to arbitrate employment claims because he was not told that, by signing the acknowledgment form, he was agreeing to arbitrate those claims. He was "not given the opportunity to read the Handbook," (Docket No. 21 at 6) and not told that the Employee Handbook contained an arbitration agreement.

The only case relied upon by the plaintiff for his assertion that sometimes parties are not held to contracts that they have signed but not read is *Howell v. NHC Healthcare*, 109 S.W.3d 731 (2003) That case is distinguishable in several ways from this one. First, the court in *Howell* creates a distinction for arbitration clauses included in agreements between patients and healthcare providers and seems more reluctant to enforce those agreements because patients usually have no option when seeking healthcare but to agree to whatever is put in front of them. In addition, Mr. Howell was unable to read or write, the agreement was not read to him, and the NHC representative did not ask Mr. Howell if he could read. Finally, the court in *Howell* relied on aspects of the district court opinion in *Cooper v. MRM Investment Co.*, 199 F.Supp.2d 771 (M.D.Tenn. 2002), that were reversed on appeal by the Sixth Circuit. *See Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir.2004).

---

1. Indeed, anticipating that he would contest this, the defendant has furnished copies of several other documents containing the plaintiff's signature that seem, from a layman's perspective, identical to that of the plaintiff on the form.

Moreover, here, clearly the plaintiff can read and write and held the responsible position of radiological technician at UMC for some seven years. A letter in the record hand-written by the plaintiff shows some indication that he is intelligent and articulate.[2] The plaintiff states that he was given the Employee Handbook in a meeting that lasted 45 minutes and that he did not turn in the signed Employee Acknowledgment Form from the back of the Handbook until the end of the meeting; therefore, he had the entire meeting within which to peruse the form he had been asked to sign. And the Handbook that he took away from the meeting retained in the back of it another identical copy of the Employee Acknowledgment Form, which he was free to peruse during the seven years of his employment at UMC.

The Employee Acknowledgment Form is one page and contains, in part, the following language:

> I also understand that the company may change, rescind or add to any of the policies, benefits or practices described in the Employee Handbook, except the employment-at-will policy and the Mutual Agreement to Arbitrate referred to below, in its sole and absolute discretion, with or without prior notice.
>
> .    .    .    .    .
>
> In addition, I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").
>
> I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative costs of the AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee), and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both me and the Company.

(Docket No. 19, Ex. 1) This form contains five paragraphs. Two of them entirely relate to the arbitration agreement, and a third in large part relates to the arbitration agreement.

---

**2.** A note written by the plaintiff on December 22, 1997 contains this wording: "With great regret I am tendering my resignation. I've enjoyed my time working in the inpatient department. My last day will be 1/5/98. Thanks for your honesty and integrity during my tenure in the Inpatient department." (Docket No. 19, Attach.)

■ The court simply cannot find credible the plaintiff's statements that he did not read the form before he signed it or the duplicate form contained at the back of the Handbook that was in his possession at anytime during all the years that he continued to work for UMC. Therefore, the court finds unpersuasive the plaintiff's argument that there was no meeting of the minds or mutual assent to arbitrate employment disputes.

Likewise, the court finds unpersuasive the plaintiff's assertion that the arbitration agreement is invalid because the Fair Treatment Process could be modified without notice to or consent of the employees, and the last procedural step in that process was arbitration. The sentence before the provision that says that the Fair Treatment Process may be modified without notice or consent states specifically:

> The Company will not modify or change the Agreement between you and the Company to use final and binding arbitration to resolve employment-related disputes without notifying you and obtaining your consent to such changes.

(Docket No. 19, Ex. 1 at 73) Moreover, the Employee Acknowledgment Form contains this sentence as the last sentence right above the employee's signature: "I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both me and the Company."

■ The last argument made by the plaintiff is that he did not knowingly waive his right to a jury trial. This issue is to be decided under federal law, and the factors to be considered are: (1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir.2003) (*en banc*) (internal citations omitted).

■ Here, the waiver of the jury trial right is clear. The Employee Acknowledgment Form specifically states: "... both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process." The plaintiff had at least 45 minutes to consider the waiver during the meeting when the Handbook was given to him. He would not have had an opportunity to consult with a lawyer during this time frame, but the plaintiff does not assert that he was told he needed to sign the Acknowledgment Form and turn it in or he would be fired or that there was any notion of "take it or leave it" at all communicated during the training meeting. He was allowed to take both the Handbook and a duplicate copy of the Acknowledgment Form contained at the back of the Handbook with him from the meeting. As the court has already observed, the plaintiff's position, experience and intelligence level would indicate that he read documents before signing them and moreover, understood them. The consideration for the waiver was adequate in that there is a mutuality of obligation, as required under Tennessee law. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir.2000). The Acknowledgment Form clearly states: "I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, ... I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both me and the Company." (Docket No. 19, Attach.) The defendant agrees to arbitrate the same claims that the plaintiff will be required to arbitrate, and the defendant may not unilaterally

change the agreement or the rules that govern it. This is sufficient consideration to uphold the agreement to arbitrate.

All in all, this arbitration agreement contains none of the unconscionable aspects that often cause courts to refuse to enforce them. The maximum costs that the plaintiff will incur is $125.00, which is half of the present district court filing fee. The arbitrator is selected jointly by the employee and the company and may award any remedy that would have been available to the employee, had the claim been filed in court, including attorney's fees. The company gets no more right to discovery than the employee does.

### Conclusion

For the reasons expressed herein, the defendant's Motion to Dismiss and Refer Claims to Binding Arbitration (Docket No. 18) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE** in favor of binding arbitration under the agreement of the parties.

It is so **ORDERED**.