IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 21, 2008 Session

**ESTATE OF ELIZABETH MOORING v. KINDRED NURSING CENTERS, ET AL.**

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 6124    Joseph H. Walker, Judge**

**No. W2007-02875-COA-R3-CV - Filed January 20, 2009**

This appeal involves an arbitration agreement executed when the decedent was admitted to a nursing home.  The trial court denied the nursing home's motion to compel arbitration.  We vacate the trial court's order and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

F. Laurens Brock, David J. Ward, T. Ryan Malone, Chattanooga, TN, for Appellants

Parke S. Morris, Memphis, TN, for Appellee

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Elizabeth Mooring was admitted to Ripley Healthcare and Rehabilitation Center ("the Nursing Home") on or about February 1, 2006. Mrs. Mooring had previously been hospitalized due to a sudden onset of transverse myelitis, which left her completely paralyzed from her shoulders down.

On February 20, 2007, Mrs. Mooring filed a complaint against the Nursing Home and various related entities[1] alleging negligence pursuant to the Tennessee Medical Malpractice Act, Tenn. Code Ann. § 29-26-115, *et seq.* Specifically, Mrs. Mooring alleged that she had developed a pressure sore prior to entering the Nursing Home, which the Nursing Home failed to effectively treat. Mrs. Mooring sought compensatory and punitive damages.

On August 9, 2007, the Nursing Home filed a motion to compel arbitration and to stay all proceedings in the trial court. The Nursing Home attached to the motion a document entitled, "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT BETWEEN RESIDENT AND FACILITY (OPTIONAL)," which was signed by Mrs. Mooring's husband, James Mooring. The document was dated January 30, 2006.

The parties engaged in discovery limited to issues regarding the formation of the arbitration agreement. Mr. Mooring, Mrs. Mooring, and Yelonda Lynch, the admissions coordinator at the Nursing Home, were deposed. The depositions of Ms. Lynch and Mrs. Mooring are included in the record before us, and selected pages from Mr. Mooring's deposition are also in the record.

According to Ms. Lynch, Mrs. Mooring was scheduled to arrive at the Nursing Home several days before she finally arrived. Ms. Lynch said that on January 30, in preparation for Mrs. Mooring's arrival, she had printed out all the admission documents and partially completed them by signing her name in the relevant spaces and filling in the dates. Ms. Lynch explained that Mrs. Mooring was not discharged from the hospital as expected, and she was finally admitted after hours on February 1, 2006. Ms. Lynch said she took the admission paperwork to Mrs. Mooring's room the next morning. She said she specifically recalled Mrs. Mooring telling her, "my husband will take care of that," so Ms. Lynch accompanied Mr. Mooring to her office for him to sign the documents. Ms. Lynch pointed out that on some of the admission documents, the admission date or effective date originally stated, "1/30/06," but it is marked through, and "2/1/06" was written beside it. In other places, however, the date remains listed as "1/30/06." A fax confirmation page regarding the admission documents also bears the date "1/30/06."

---

[1] For ease of reference, we will refer to the Nursing Home as it if were the sole defendant. The identity of the other defendants is not critical to the resolution of this appeal.

Mr. Mooring's deposition testimony directly conflicted with Ms. Lynch's testimony. According to Mr. Mooring, he spoke with Ms. Lynch via telephone to discuss Mrs. Mooring's admission to the Nursing Home, and he explained to Ms. Lynch that Mrs. Mooring was paralyzed. Mr. Mooring said he then went to the Nursing Home on January 30, 2006, to sign all the necessary paperwork while Mrs. Mooring was still in the hospital. Mr. Mooring said he signed the paperwork early so that a bed would be reserved and ready for Mrs. Mooring when she arrived. Mr. Mooring said he did not read the arbitration agreement he signed, or ask questions about it, but Ms. Lynch did permit him to ask questions during the admission process. Mr. Mooring was given copies of the documents he signed. He took the copies home but did not show them to Mrs. Mooring.

Mr. Mooring testified that Mrs. Mooring was mentally competent at the time of her admission to the Nursing Home. He said he had previously discussed with Mrs. Mooring that she was going to be admitted to the Nursing Home, but he and Mrs. Mooring did not specifically discuss the admission papers that would need to be signed. After Mr. Mooring signed the admission documents at the Nursing Home, he told Mrs. Mooring about signing them, and Mrs. Mooring did not complain or object to his doing so. When Mr. Mooring was asked whether he felt he was authorized to sign on his wife's behalf, Mr. Mooring said he thought he was "doing the right thing." Mr. Mooring said he had no reason to believe that he did not have Mrs. Mooring's permission to sign her in to the Nursing Home. Mr. Mooring testified that Mrs. Mooring had not signed any documents since she became paralyzed. Mr. Mooring had signed the admission documents at the hospitals, and he paid all of the bills. He said his wife had never indicated that she did not want him to continue signing documents on her behalf, and she never told anyone at the hospitals or Nursing Home that she did not want Mr. Mooring to sign for her. After Mrs. Mooring left the Nursing Home, she was admitted to a different nursing home, where Mr. Mooring again signed all the admission documents, including another arbitration agreement.

Mrs. Mooring testified that she did not remember her hospitalizations or anything about her stay at the Nursing Home. She said she was able to talk and read at the time, but she was not physically capable of signing her name. Mrs. Mooring explained that she had no feeling in her extremities, and although she could "just raise" her left arm, she could not use either hand. Mrs. Mooring had been taking pain medication since the onset of her disease.

Mrs. Mooring testified that she was not making any healthcare decisions or financial decisions during the relevant time period; Mr. Mooring was making the decisions for her. Mr. Mooring was also signing all admission documents at the hospitals and nursing homes she entered. Mr. Mooring was the only person to sign documents on Mrs. Mooring's behalf during the relevant time period. Mrs. Mooring said she never had a conversation with Mr. Mooring prior to his signing admission documents, but she would learn that he had signed them when he told her afterward. Mrs. Mooring did not tell Mr. Mooring not to sign documents for her or otherwise object to his signing, and she never revoked a contract he signed. Mrs. Mooring said Mr. Mooring told her he had signed the Nursing Home admission documents within a couple of days of his signing them.

The trial court heard oral argument from the attorneys on November 9, 2007. Counsel for the Nursing Home argued that Mr. Mooring was authorized to sign the arbitration agreement on behalf of Mrs. Mooring under several alternative theories. First, the Nursing Home argued that if the court credited Ms. Lynch's testimony that the admission documents were signed after Mrs. Mooring told Ms. Lynch that her husband could sign them, then Mr. Mooring was acting with express actual authority. Second, the Nursing Home argued that, even accepting Mr. Mooring's version of the events, he was acting with implied actual authority when he signed the documents for Mrs. Mooring. Finally, the Nursing Home argued that the doctrine of ratification applied because Mrs. Mooring knew her husband signed the documents and did not object to his doing so. The Nursing Home insisted that it was *not* relying on the separate theory of apparent authority. The trial court took the matter under advisement and entered an order on November 16, 2007, finding the Nursing Home "[had] not shown facts to support apparent authority of Mr. Mooring to bind his wife to the Arbitration Agreement." In addition, the trial court found that the Nursing Home failed to show "that the parties actually bargained over the arbitration agreement or that it was a reasonable term considering the circumstances," citing *Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731 (Tenn. Ct. App. 2003) and *Raiteri v. NHC Healthcare/Knoxville, Inc.*, No. E2003-00068-COA-R9-CV, 2003 WL 23094413 (Tenn. Ct. App. Dec. 30, 2003). Therefore, the trial court denied the Nursing Home's motion to compel arbitration.

The Nursing Home then filed a "motion to reconsider," contending that it was relying on actual, not apparent, authority. The Nursing Home also cited various recent cases and attempted to distinguish *Howell* and *Raiteri* as cases involving contracts of adhesion. The Nursing Home also filed a supplemental brief in which it asked the court to conduct an evidentiary hearing to address the disputed factual issues regarding the execution of the arbitration agreement. On December 14, 2007, the Nursing Home filed a notice of appeal from the November 16 order, without a ruling on its motion to reconsider.[2]

## II. ISSUES PRESENTED

The appellants present the following issues, as we perceive them, for review:

1. Whether the trial court erred in denying the motion to compel arbitration on the basis that the arbitration agreement was not bargained for or reasonable under the circumstances;
2. Whether the trial court erred in denying the motion to compel arbitration on the basis that Mr. Mooring did not have authority to bind his wife to the arbitration agreement.

For the following reasons, we reverse the decision of the circuit court and remand for further proceedings.

## III. STANDARD OF REVIEW

---

[2] While this appeal was pending, Elizabeth Mooring passed away. The Estate of Elizabeth Mooring was substituted as the proper party by order of this Court on January 12, 2009.

On appeal, this Court reviews a grant or denial of a motion to compel arbitration under the same standards that apply to bench trials. *Cabany v. Mayfield Rehab. & Special Care Ctr.*, No. M2006-00594-COA-R3-CV, 2007 WL 3445550, at *3 (Tenn. Ct. App. Nov. 15, 2007); *Hubert v. Turnberry Homes, LLC*, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at *2 (Tenn. Ct. App. Oct. 4, 2006). A trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2008); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). When the trial judge has failed to make specific findings of fact, we review the record to determine where the preponderance of the evidence lies, without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Hardcastle v. Harris*, 170 S.W.3d 67, 78-79 (Tenn. Ct. App. 2004). In other words, we weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. *Parks Props. v. Maury County*, 70 S.W.3d 735, 741 (Tenn. Ct. App. 2001). We review a trial court's resolution of legal issues without a presumption of correctness and reach our own independent conclusions regarding these issues. *Id.*

## IV. DISCUSSION

### A. Whether the Agreement was "Bargained for or Reasonable"

First, we will address the trial court's decision to deny the motion to compel arbitration because the Nursing Home failed to show "that the parties actually bargained over the arbitration agreement or that it was a reasonable term considering the circumstances." According to *Diagnostic Center v. Steven B. Stubblefield, M.D., P.C.*, 215 S.W.3d 843, 847 (Tenn. Ct. App. 2006), such proof has only been required in cases dealing with contracts of adhesion. Thus, we begin with a review of the law regarding contracts of adhesion.

A "contract of adhesion" has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (quoting *Black's Law Dictionary* 40 (6th ed. 1990)). Even a contract of adhesion is not automatically unenforceable. The enforceability of contracts of adhesion generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable. *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004).

In *Buraczynski*, 919 S.W.2d at 316, the Tennessee Supreme Court considered the enforceability of arbitration agreements between physicians and patients. The arbitration agreements executed by the patients were found to be contracts of adhesion because the patients had to sign the agreements in order to continue receiving medical care. *Id.* at 320. However, that fact was not determinative of the arbitration agreements' enforceability. The Court explained various considerations relevant to its analysis:

> [I]n general, courts are reluctant to enforce arbitration agreements between patients and health care providers when the agreements are hidden within other types of contracts and do not afford the patients an opportunity to question the terms or purpose of the agreement. This is so particularly when the agreements require the patient to choose between forever waiving the right to a trial by jury or foregoing necessary medical treatment, and when the agreements give the health care provider an unequal advantage in the arbitration process itself.

*Id.* at 321. In applying these principles, the Court concluded that the arbitration agreements, though contracts of adhesion, were not unconscionable or unenforceable. The arbitration agreements were not hidden within a clinic or hospital admission contract, but were separate, one-page documents each entitled "Physician-Patient Arbitration Agreement." *Id.* Also, a short explanation attached to the document encouraged the patient to discuss questions about the agreement with the physician. *Id.* Neither party was given an unfair advantage in the arbitration process, and both parties were bound by the arbitrator's decision. *Id.* Furthermore, the patient was "clearly informed by a provision in ten-point capital letter red type, directly above the signature line, that 'by signing this contract you are giving up your right to a jury or court trial' on any medical malpractice claim." *Id.* There were no buried terms, as all terms were laid out clearly in the agreement. *Id.* Also, the agreement could be revoked for any reason within thirty days. *Id.* "Finally, and perhaps most importantly, the agreements did not change the doctor's duty to use reasonable care in treating patients, nor limit liability for breach of that duty, but merely shifted the disputes to a different forum." *Id.* The Court therefore determined that the arbitration agreements, though contracts of adhesion, were enforceable. *Id.*

The Eastern Section of this Court applied the *Buraczynski* factors to arbitration agreements included in nursing home contracts in *Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731 (Tenn. Ct. App. 2003), and in *Raiteri v. NHC Healthcare/Knoxville, Inc.*, No. E2003-00068-COA-R9-CV, 2003 WL 23094413 (Tenn. Ct. App. Dec. 30, 2003), and held that the arbitration agreements in those cases were contracts of adhesion *and* also unconscionable. In both cases, the arbitration provisions were simply paragraphs within the larger admission contract, which dealt with many issues, rather than being set forth in a separate, stand-alone document. *Raiteri*, 2003 WL 23094413, at *8; *Howell*, 109 S.W.3d at 734. Both agreements were offered on a take-it-or-leave-it basis, as the patients had to sign the agreements in order to be admitted to the nursing homes. *Raiteri*, 2003 WL 23094413, at *8; *Howell*, 109 S.W.3d at 735. The provisions waiving the patients' right to a jury trial were buried and in no way highlighted or bolded, there was no explanation addressing how mediation and arbitration worked, and the nursing home alone was responsible for choosing the arbitrator. *Raiteri*, 2003 WL 23094413, at *8; *Howell*, 109 S.W.3d at 734-35. Additionally, in *Howell*, the patient was unable to read. The Court stated that "the fact that Howell cannot read does not excuse him from a contract he voluntarily signed." *Id.* at 735 (citing *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001)). However, a nursing home employee did not ask him to read it, but took it upon herself to explain the document, and she

failed to mention that he was waiving the right to a jury trial if he brought a claim against the nursing home. *Id.* Given all these circumstances, the Court held that these contracts of adhesion were unenforceable because the nursing homes failed to demonstrate that the parties bargained over the arbitration agreements' terms or that the provisions were within the reasonable expectations of an ordinary person. *Id.* As explained above, however, the Eastern Section later clarified that it had only required such proof in cases dealing with contracts of adhesion. *Diagnostic Ctr.*, 215 S.W.3d at 847.

In the case before us, we conclude that the arbitration agreement was not a contract of adhesion; thus, the Nursing Home was not required to prove that the parties actually bargained over its terms or that the terms were reasonable under the circumstances. The arbitration agreement was not provided with the admission agreement on a "take it or leave it" basis. The arbitration agreement was a separate, eight-page document, which clearly stated in its title, in bold print, "OPTIONAL." In addition, a section entitled "Resident's Understanding of Agreement" appeared on the last page just above the signature line for the resident or his or her legal representative, which stated:

> The Resident understands that (A) he/she has the right to seek legal counsel concerning this Agreement, (B) the execution of this Agreement is not a precondition to the furnishing of services to the Resident by the Facility, and (C) this Arbitration Agreement may be revoked by written notice to the Facility from the Resident within thirty (30) days of signature. . . .

Although Mr. Mooring admitted that he did not read the agreement or ask questions about it, he had the opportunity to do so, as Ms. Lynch permitted him to ask questions throughout the admission process. In addition, Ms. Lynch testified that she always tells the person signing the admission documents that the arbitration agreement is optional and can be revoked within thirty days.[3] She also explained that she does not advise the person on whether he or she should or should not sign the arbitration agreement because it is the signor's decision to make. Mr. Mooring was given copies of all the documents he signed. In short, this was not a situation where an arbitration agreement was presented "without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer [could not] obtain the desired product or service except by acquiescing to the form of the contract." Mrs. Mooring would have been admitted to the Nursing Home even if Mr. Mooring refused to sign the arbitration agreement. Because the arbitration agreement was not a contract of adhesion, the trial court erred in requiring the proof discussed in *Howell* and *Raiteri* when dealing with adhesion contracts.

## B. Questions of Authority

As explained above, the trial court also concluded that Mr. Mooring did not have "apparent authority" to enter into the arbitration agreement on Mrs. Mooring's behalf. However, the Nursing

---

[3] Ms. Lynch had a "script" taped to her desk regarding the arbitration agreement, which stated, among other things, that the arbitration agreement was optional and could be revoked within thirty days. Ms. Lynch testified she always read from the script when she presented the arbitration agreement.

Home was not arguing that Mr. Mooring acted with apparent authority. The Nursing Home contended that (i) express actual authority existed according to Ms. Lynch's testimony, (ii) implied actual authority existed according to the testimony of Mr. and Mrs. Mooring, and/or (iii) ratification occurred. The trial court did not address these arguments[4] or the conflict between the testimony of Ms. Lynch and Mr. Mooring.

In *Raines v. National Health Corp.*, No. M2006-1280-COA-R3-CV, 2007 WL 4322063, at *3-6 (Tenn. Ct. App. W.S. June 26, 2007), this Court explained the procedure a trial court should follow in resolving issues regarding the enforceability of an arbitration agreement:

> It is recognized that, in a contest over an arbitration agreement, a court has to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (citations omitted). "Generally, whether a valid agreement to arbitrate exists between the parties is to be determined by the courts, and if a complaint specifically challenges the arbitration clause on grounds such as fraud or unconscionability, the court is permitted to determine it[s] validity before submitting the remainder of the dispute to arbitration." *Taylor* [*v. Butler*, 142 S.W.3d 277, 283-84 (Tenn. 2004)] (citations omitted).
>
> The Tennessee Uniform Arbitration Act, T.C.A. § 29-5-301 *et seq*., speaks to situations in which there is a disagreement between the parties over enforcement of an alleged agreement to arbitrate. When the party seeking arbitration produces a written agreement to arbitrate as described in T.C.A. § 29-5-302 and another party "denies the existence of the agreement to arbitrate, the Court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied." T.C.A. § 29-5-303(a). . . .
>
> . . . .
>
> In considering opposition to a motion to compel arbitration, a court must distinguish between those arguments attacking the agreement which can be resolved solely as a matter of law and those arguments which require resolution of factual

---

[4] We note that counsel for Mrs. Mooring erroneously represented to the trial court that implied actual authority was really just "another way of saying" apparent authority and "a distinction without a difference." As we recently noted in *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *6 (Tenn. Ct. App. Oct. 20, 2008), actual authority and apparent authority are two different bases for attributing an agent's actions to the principal. Implied authority is an aspect of actual authority and is "typically used to denote actual authority either to do what is necessary to accomplish the agent's express responsibilities, or to act in a manner that the agent reasonably believes the principal wishes the agent to act, in light of the principal's objectives and manifestations." *Id.* (citing *Restatement (Third) of Agency*, § 2.01, cmt.b). With apparent authority, "a principal is responsible for the acts of an agent . . . only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority." *Id.* (citing *S. Ry. Co. v. Pickle,* 197 S.W. 675, 677 (Tenn. 1917)). Although we are not aware of a case applying implied actual authority in the context of nursing home arbitration agreements, it is clearly recognized as a basis for an agency relationship.

issues. While the former category mirrors a case in which a court is called upon to interpret contractual language and apply it to uncontested facts, the latter requires the trial court to receive evidence and resolve the relevant disagreements before deciding the motion. See T.C.A. § 29-5-303. Although it appears that neither this Court nor our Supreme Court has had occasion to make this principle explicit, prior decisions have nonetheless illustrated the necessity of an evidentiary hearing when facts related to an arbitration agreement are disputed. See, e.g., *Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 732-35 (Tenn. Ct. App. 2003) (discussing trial court's evidentiary hearing and findings); see also *Raiteri v. NHC Heathcare/Knoxville, Inc.*, 2003 WL 23094413, at *4 (Tenn. Ct. App. Dec. 30, 2003); cf. *Guffy v. Toll Bros. Real Estate, Inc.*, 2004 WL 2412627, at *6-7 (Tenn. Ct. App. Oct. 27, 2004) (remanding case to trial court for determination of additional facts).

. . . .

The trial court's role, then, is not just to determine if there is an issue regarding enforceability. It must also determine if the agreement is in fact enforceable. Even if the party challenging the arbitration agreement interposes such defenses as fraud in the inducement, unconscionability, or lack of authority, it is up to the trial court to resolve such issues and make a clear ruling as to whether or not the agreement is enforceable. Therefore, the trial court must proceed expeditiously to an evidentiary hearing when it faces disputed issues of fact that are material to a party's motion to compel arbitration; it may not decline to resolve the question until trial of the underlying case. Where material facts are not contested, however, no such evidentiary hearing is required.

*Id.* at *3-6. Because of the disputed factual issues involved in this case and the lack of any findings by the trial court regarding the relevant issues of authority, we find it appropriate to remand for further proceedings and findings with respect to whether Mr. Mooring had authority to execute the admission agreement and arbitration agreement on behalf of Mrs. Mooring.

## V. CONCLUSION

For the aforementioned reasons, we vacate the trial court's order denying the Nursing Home's motion to compel arbitration and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the appellants, Kindred Nursing Centers Limited Partnership f/k/a Vencor Nursing Centers, L.P., d/b/a Ripley Healthcare and Rehabilitation Center; Kindred Healthcare Operating, Inc., and Kindred Healthcare Services, Inc., both d/b/a Ripley Healthcare and Rehabilitation Center, and their surety, and one-half to the appellee, the Estate of Elizabeth Mooring, for all of which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.